[Civ. No. 1351.   Third Appellate District.—May 10, 1915.]

## C. A. PHENEGAR, Appellant, v. P. R. PAOLINI et al., Respondents.

ACTION TO QUIET TITLE—FRAUD—TRANSFER OF NOTES AND MORTGAGES—EVIDENCE—BONA FIDE TRANSACTION.—In this action to quiet plaintiff's title to certain notes and mortgages purchased by him at sheriff's sale under a writ of execution issued upon a judgment obtained by the plaintiff against the original owner of the notes and mortgages, it is held that the evidence supports the finding that the transfer of the notes and mortgages by such original owner to the defendant herein involved a *bona fide* transaction and was not done with intent to defraud creditors.

ID.—EVIDENCE—IMPROPER IMPEACHMENT—HEARSAY.—In such an action, it is not error to refuse to permit a witness to testify as to what the agent of the original holder of the notes and mortgages had told him that his principal had written concerning his continued ownership of the notes after having transferred them to the defendant, the testimony sought being hearsay.

ID.—PLEADING—AMENDMENT TO CONFORM TO EVIDENCE—WHEN REFUSAL NOT ERRONEOUS.—It is not an abuse of discretion to refuse leave to the plaintiff to amend his complaint so that it would conform to certain facts developed by the evidence relative to the time at which the assignment of the notes and mortgages was made, where he was properly given, under the rulings of the court, the full benefit of the proof to which the proposed amendment was directed.

ID.—TRIAL—REFUSAL TO REOPEN CASE—REVIEW ON APPEAL.—An order overruling a motion to reopen a case before decision rendered is not 'an appealable order, but is reviewable on appeal from the judgment and the order denying a new trial when the proceeding is incorporated in the bill of exceptions.

APPEAL from a judgment of the Superior Court of Fresno County and from an order denying a new trial. George E. Church, Judge.

The facts are stated in the opinion of the court.

George Cosgrave, and Miles Wallace, for Appellant.

W. D. Crichton, and C. K. Bonestell, for Respondents.

HART, J.—The plaintiff, as a judgment creditor of the defendant, E. Desperati, originally proceeded in this action by way of a creditor's bill for the purpose of obtaining a decree declaring void and setting aside a transfer by the latter to the defendant, Marchetti, of certain notes and mortgages upon the ground that said transfer had been made with the intent to defraud the plaintiff of his claim against the said defendant, Desperati.

The third amended and supplemental complaint, upon which, with the answers thereto and a cross-complaint, by the defendant, Marchetti, the present action was tried, was filed after the plaintiff had obtained a judgment against Desperati upon the claim held by the former against the latter and after execution had thereupon been issued and levied upon the notes and mortgages in question, the latter sold by the sheriff under said execution and the proceeds of said sale applied toward the satisfaction of the plaintiff's judgment.

The object of the present action is in effect to secure a judgment quieting plaintiff's title to the notes and mortgages in dispute.

It appears from the complaint, that Desperati, in September, 1908, "and at all times thereafter," was indebted to the plaintiff in the sum of $1,826.28, and that the plaintiff, on March 14, 1911, brought an action against Desperati to recover said sum, in the superior court of Fresno County, recovering judgment in the sum so sued for on the twenty-fourth day of August, 1911.

Departing now from the order in which the facts are stated in the complaint, these may here be stated:

The defendant, Desperati, prior to the time at which the notes and mortgages in dispute were transferred, had been convicted of the crime of grand larceny in the superior court of Fresno County, and judgment of sentence thereupon pronounced against him. He, however, took and prosecuted an appeal to the court of appeal from the judgment of conviction and was by the trial court admitted to bail, pending the determination of said appeal. He subsequently gave said bail, the defendants, P. R. Paolini and A. G. Leverone, becoming sureties thereon. At and prior to this time Desperati was the owner of two certain tracts of land which are situated in Fresno County and specifically described in the complaint. The title to both these tracts of land, on the thirtieth day of March, 1910, stood in the names of and was held by the defendants, Paolini and Leverone, but, so the complaint alleges, "neither of said defendants at any time had any interest therein save as trustees only for the benefit of said E. Desperati."

On September 19, 1910, Desperati, acting through his said trustees as aforesaid, sold one of said tracts of land to one Adolfo Pierini and the other to one Guido Dami and executed deeds to the said grantees, respectively, to said tracts of land. As a part of the purchase price of the land so purchased by Pierini, the latter executed and delivered to Paolini and Leverone his three several promissory notes, each being dated September 19, 1910, and payable as follows: The first, for $1,176.66, on the first day of October, 1914; the second, for $1,176.66, on October 1, 1915, and the third, for $1,476.66, on October 1, 1916, each of said notes providing for interest at the rate of seven per cent per annum and all secured by a mortgage upon the land sold to Pierini. Dami, who purchased the tract of land secondly described in the complaint, as a part of the purchase price thereof, on the date of the transfer, like-

wise executed and delivered to Paolini and Leverone his three several promissory notes for five hundred and seventy-five dollars each, due and payable October 1, 1914, October 1, 1915, and October 1, 1916, respectively, each bearing interest at the rate of seven per cent per annum and secured by a mortgage upon the land so sold to him.

Both said mortgages were duly recorded in the office of the county recorder of Fresno County.

It is alleged in the complaint that, the said Paolini and Leverone having become sureties on the bail bond of Desperati, as above explained, Desperati authorized and caused each of said notes and mortgages to be made and the same were made and taken in the names of said bondsmen (Paolini and Leverone) as payees and mortgagees thereof, "instead of in the name of E. Desperati, the real owner thereof"; that the defendants, Paolini and Leverone, "at all times held the same in trust for said Desperati to indemnify themselves against any liability upon said bail bond as hereinbefore alleged and not otherwise."

On October 3, 1910, so the complaint declares, Paolini and Leverone, acting under instructions and by the direction of Desperati, "and not otherwise," indorsed all the notes above mentioned in blank and prepared and executed an assignment of the mortgages given to secure said notes to the defendant, Frank Marchetti, and thereupon deposited in the Bank of Central California, as depositary, the said assignment together with the notes and mortgages, with instructions to said bank to deliver the same to said Marchetti whenever and in the event that the judgment of conviction of grand larceny against Desperati was reversed by the district court of appeal, to which an appeal from said judgment had been taken, and the sureties on the latter's bail bond, Paolini and Leverone, were thereupon released and discharged from the obligations of said undertaking.

Prior, however, to the decision by the appellate court in the criminal case against Desperati and before the sureties were released from the obligations of said bail bond and consequently before the delivery of the notes and mortgages under the assignment to Marchetti, said notes and mortgages were, as before stated, seized by the sheriff under the writ of execution issued upon the judgment obtained by the plaintiff in the action above referred to and, after due proceedings, sold by

that officer to the plaintiff, who paid therefor the sum of $1,505.00, which sum was by the sheriff credited on said judgment.

The complaint charges that the purported assignment of the notes and mortgages to Marchetti was executed without any consideration and that it was made by Paolini and Leverone, under the express direction of Desperati, with the fraudulent intent on the part of all the defendants and for the sole purpose of placing said notes and mortgages beyond the reach of the claim of the plaintiff against Desperati and to prevent the plaintiff from securing satisfaction of said claim.

The complaint further alleges that, notwithstanding the ownership of said notes and mortgages by the plaintiff, the defendants still claim ownership thereof on behalf of said Marchetti and "obstruct and annoy the plaintiff in the possession and enjoyment thereof and do now prevent plaintiff from collecting the interest due upon said notes and mortgages, and said defendants, in pursuance of the design of all of said defendants to place said notes and mortgages beyond the reach of this plaintiff, claim ownership thereof in said Frank Marchetti by reason of said fraudulent assignment and do thereby jeopardize the title of this plaintiff in and to the same."

The prayer asks that the plaintiff be declared the owner of the notes and mortgages, and that the purported assignment of the same to Marchetti be ordered delivered up and canceled.

Marchetti filed an answer and a cross-complaint. In the former he specifically denies each and all the allegations of the complaint involving the charge of fraud in the transaction whereby the notes and mortgages concerned here were transferred to him and admits that he claims ownership of the said notes and mortgages.

His cross-complaint contains, substantially, the same allegations as are contained in the plaintiff's complaint respecting the circumstances under which the tracts of land and the notes and mortgages described in said complaint were transferred to Paolini and Leverone. He then alleges that said notes and mortgages were transferred to him by Paolini and Leverone, by the direction of Desperati, in consideration of an indebtedness of five thousand dollars, or thereabouts, due from Desperati to him, and which indebtedness had existed before and at the time of the execution of said transfer; that the assignment to him was, as stated in the plaintiff's complaint,

27 Cal. App.—25

deposited in the bank therein named and was to take effect whenever and in the event of a decision on appeal favorable to Desperati in the criminal case pending against him; ''that said assignment was not made for the purpose of defrauding any creditor of the defendant, Desperati, but for the purpose of preferring this cross-complainant as a *bona fide* creditor of said Desperati's,'' etc.

He asked for a decree adjudging him to be the owner of the notes and mortgages in question and compelling the plaintiff to deliver the same to him.

The defendants, Paolini and Leverone, jointly answering the complaint, denied the allegations of fraud in the transfer of the notes and mortgages to Marchetti and admitted the claim of ownership thereof by the latter and allege that he is the owner thereof.

The plaintiff by specific denials answered the cross-complaint.

Upon the issues thus framed the cause was tried by the court without a jury, and the court found the facts substantially as they are stated in the cross-complaint of Marchetti, and further found ''that, at the time of said transfer by the said Desperati to the said Marchetti, the former had property in this state other than hereinabove referred to, which plaintiff could have compelled defendant, Desperati, to apply to the satisfaction of said Desperati's indebtedness to him.''

Upon said findings and the conclusions of law following therefrom, judgment was entered in favor of the defendant and cross-complainant, Marchetti, adjudging him to be the owner of said notes and mortgages, and requiring the plaintiff to deliver the same to the possession of Marchetti and to account to the latter for any amounts which the plaintiff may have collected upon said notes and pay the same over to said cross-complainant.

This appeal is prosecuted, upon a bill of exceptions, by the plaintiff from the said judgment and the order denying his motion for a new trial.

The motion for a new trial was based upon the asserted insufficiency of the evidence to justify the findings, of errors in law occurring at the trial, and upon the alleged error of the trial court in denying the plaintiff's motion to reopen the case after the same had been submitted and prior to the decision, ''for the admission of evidence in rebuttal and in furtherance

of justice.'' · And these are the general points upon which the claim for a reversal is here advanced.

There is no dispute as to the indebtedness of Desperati to the plaintiff in the sum for which the latter obtained judgment against the former; nor is it disputed that the plaintiff bought the notes and mortgages at the sheriff's sale under the execution issued upon the said judgment. And the evidence shows, as the pleadings admit, these facts: That Desperati was, on the fifteenth day of March, 1910, convicted of the crime of grand larceny; that he appealed from the judgment of conviction to the court of appeal and that the trial judge admitted him to bail pending the determination of his case on appeal, and that he gave a bail bond, Paolini and Leverone qualifying as sureties thereon; that Paolini and Leverone, as a condition to becoming such sureties, exacted from Desperati indemnity against loss in the event that he (Desperati) failed to obey the requirements of said bond; that Desperati thereupon, and for the purpose of indemnifying his bondsmen, executed a deed of trust to the two tracts of land described in the complaint to Paolini and Leverone; that, thereafter, Desperati left the state of California and went to Canada and remained there for some time; that the trustees, by the direction of Desperati, subsequently sold the two tracts of land, taking as part payment therefor the notes and mortgages in dispute and holding the same for the purpose for which the property had previously been conveyed to them in trust, as above explained; that the transfer of said notes and mortgages was, under instructions from Desperati, made to Marchetti by Paolini and Leverone on the third day of October, 1910, the same to be delivered to the transferee by the Bank of Central California, with which they were deposited ''whenever and in the event that the judgment of conviction theretofore had and taken in the said action . . . wherein said Desperati was convicted of grand larceny, was reversed by the district court of appeal.''

The specific contention of the plaintiff is, however, that the evidence does not support the finding that the transfer of the notes and mortgages by Desperati to Marchetti involved a *bona fide* transaction or one founded upon a valuable consideration. This constitutes the subject and the crux of the controversy so far as the evidence is concerned.

It must be conceded that the testimony of both Desperati and Marchetti appears to be full of self-contradictions upon certain of the material circumstances of the alleged indebtedness of Desperati to Marchetti in the sum of five thousand two hundred dollars, to extinguish which was the object of the transfer of the notes and mortgages to Marchetti; yet, we cannot say that the trial court's conclusion as to that matter was not justified or is not supported, since it appears that both Desperati and Marchetti positively testified that they had been partners in the business of farming for a considerable portion of the period of ten years; that, during a part of that period Marchetti was employed by Desperati, and that at no time in that period was there ever a settlement between them, and that they never had had a settlement until a short time prior to the transfer of the notes and mortgages to Marchetti, when it was ascertained that Desperati was indebted to Marchetti in the sum for which said transfer was executed; that the settlement between Desperati and Marchetti and the transfer of the notes and mortgages to the latter transpired before the sheriff seized and sold the notes, etc., under the execution issuing on the plaintiff's judgment.

It is not our intention, nor is it necessary, to point out herein the apparent inconsistencies in the testimony of Desperati and Marchetti and some of the other witnesses who were introduced in support of the claims of the defendants. It is deemed enough to say that, while it was important to emphasize the alleged contradictions before the trial court, we cannot perceive that an examination or consideration of them by this court can lead to a result different from that arrived at by the trial judge, since there is nothing in the inconsistencies themselves which justify us in holding that they stamp the entire testimony of the witnesses as so intrinsically unbelievable as to render it insufficient to support the decision. While a reviewing court cannot always say that the evidence justified the decision, it can, in the general run of cases, with no difficulty, or without hesitation, hold that the evidence as it appears to it supports the decision. This results from the fact that, in all cases, as is true here, the sole question, so far as the evidence is involved, is one as to the credibility of the witnesses, and its solution a function of the trial court or jury to which the questions of fact are submitted for determination.

But it may be remarked that there was at least an attempt to explain the alleged contradictions. It is further to be observed that both Desperati and Marchetti are foreigners and neither was able to speak the English language clearly and distinctly, as we are justified in judging from the manner in which they expressed themselves. In truth, Marchetti, who was not present at the trial, but whose deposition was read thereat, gave his testimony through an interpreter. Desperati explained the several transactions connected with the controversy here in "broken English." We cannot tell, of course, what impression the several witnesses made upon the trial judge by their manner of testifying, except by the result of the trial of the issues of fact as evidenced by the decision. But it can readily be apprehended how witnesses who are not sufficiently familiar with our language to express their thoughts therein clearly, distinctly, and aptly might easily be led into apparent discrepancies in their statement of the facts of the transactions to which their testimony is addressed and at the same time give their version of the vital facts of such transactions in a manner to persuade the conviction that, in the main, they have told the truth.

It is to be admitted that both Desperati and Marchetti seem to have become confused respecting certain dates of the series of events constituting the transactions from which the claimed indebtedness arose, and there was some testimony from which, unexplained, the inference would seem to be justified that the extent of Desperati's indebtedness to Marchetti did not at any time exceed the sum of one thousand two hundred dollars, and that of that amount the sum of seven hundred dollars was paid to Marchetti at the time the lands described in the complaint were sold to Pierini and Dami by Paolini and Leverone, as trustees. These matters, Desperati, in his own way, attempted to explain consistently with the claim that the amount of his indebtedness to Marchetti was the sum for the payment of which he transferred the notes and mortgages to the latter, and his explanation thereof seems to have been satisfactory to the trial judge. We see no such inherent weakness or fault in said explanation as to justify us in holding that, in accepting it, the trial judge made a mistake; nor can we say, as before stated, even if the explanation was not as satisfactory as might be desired, the testimony of the witnesses generally was so affected by the apparent discrepancies referred

to as to render it inherently improbable or insufficient, as a matter of law, to sustain the findings vital to the support of the judgment.

2. The attorney for the plaintiff asked the witness, Paolini, the following question: "Didn't Marchetti tell you at that time (referring to the occasion on which the lands were sold to Pierini and Dami) that he had to have all his money?" Objection to said question by counsel for the defendants upon the ground that it was leading and suggestive in form was sustained by the court, and the ruling is here assigned as erroneous and prejudicial. The ruling turned out to be harmless, for the identical question was propounded in a different and proper form, and, while the answer thereto as well as answers to other questions seeking like information were not very satisfactory, the witness appearing to have no memory upon the subject, they disclosed that therefrom the witness very clearly understood what counsel desired to get from him through the question a reply to which was disallowed under the ruling complained of.

3. The court, upon objection by counsel for the defendants, in effect ruled against the effort of the plaintiff's attorney to secure a statement from Paolini that a certain letter written and addressed to Paolini, and which had been lost or destroyed before the trial, contained language showing that Desperati still claimed to be the owner of the notes and mortgages after the alleged settlement with Marchetti had been effected and he (Desperati) had directed Paolini and Leverone to transfer to Marchetti said notes and mortgages in extinguishment of the indebtedness ascertained by said settlement to be due Marchetti. The ground of the objection was that the witness had previously been exhaustively examined relative to the contents of the letter and that it was thus disclosed that he had no definite recollection of the contents of the letter. The court remarked that it would be idle further to question the witness concerning the subject-matter of the letter, since he had already been fully examined with respect thereto and found to be unable to recall the contents of the letter, "unless," added the court, "you can refresh his memory." The inquiry was not further pressed, the attorney for the plaintiff merely replying to the court's remarks: "We will take a ruling." The record shows that, previously to the ruling complained of, the attorney for the plaintiff had subjected Paolini to an ex-

tended examination in an effort to procure from him a state-
ment of the contents of the letter, but without avail, the wit-
ness declaring that he had little recollection of the particular
matters referred to in the letter.    We think that, under the
circumstances, the question whether further inquiry into the
subject-matter of the letter should be permitted was one rest-
ing in the discretion of the court, and we cannot say that, in
foreclosing such further inquiry, the court abused its discre-
tion.    There must be a limit somewhere to the examination
of a witness upon a particular subject, and where, as seems
to have been true here, it is evident to the trial court, after
a full and exhaustive examination of the witness upon the
subject concerning which particular information is desired
and desirable, that nothing more can be accomplished by con-
tinuing the inquiry than has already been accomplished, then
it is clearly within the discretion, and, indeed, the duty of
the court to put an end to the further prosecution of the exam-
ination.

4. The court did not err in disallowing the witness, Kirkner,
to testify to what Paolini told him that the letter mentioned
above contained, the object of the testimony being to show
that Paolini had said to the witness that in the letter Desperati
made a statement showing that he then claimed ownership
of the notes.    The ultimate purpose sought to be achieved by
this testimony was doubtless to contradict the testimony of
Desperati that the notes and mortgages had been transferred
to Marchetti before the letter was written, but it was mani-
festly incompetent for that purpose, for it was hearsay, pure
and simple.    The letter was written in the Italian language
and was not read by Kirkner himself.    And the fact that
Paolini might have been the agent of Desperati at the time
of the receipt of the letter (and it is not clear that he was)
would not make the testimony any the less hearsay, for its
obvious purpose was to impeach Desperati, and the question
here does not present a case where it was attempted to prove
that the agent himself, assuming Paolini to have been Des-
perati's agent then, had previously made declarations concern-
ing the ownership of the notes at variance with testimony
given by him at the trial, but it is a case of trying to prove
that the agent had told a third party of a statement previously
made by his principal which was inconsistent with the testi-

mony given by said principal at the trial.   The testimony of a witness cannot be impeached in that way.

5. The next assignment involves the complaint that the court erred to the prejudice of the plaintiff in refusing him leave to amend his complaint so that it would conform to certain facts, developed by the evidence, relative to the time at which the assignment of the notes and mortgages was made to Marchetti.

The notes and mortgages, as has been shown, were executed in the names of Paolini and Leverone, and an assignment thereof executed by the latter and placed with the bank in which the notes and mortgages had been deposited, with instructions to said bank to deliver the same to Desperati in the event that the judgment in the criminal action against him was reversed on appeal.   This assignment was executed in September, 1910, the day not being named.   The proof disclosed that the transfer to Marchetti was made on the same assignment on October 3, 1910.   The claim is that the court should have permitted the plaintiff so to amend his complaint as that it would therein appear, as the evidence disclosed to be the fact, that, in the place of making an assignment directly to Marchetti, the original one to Desperati had been changed so that, by a notation on the margin thereof, it was made to run to Marchetti.

We cannot perceive wherein the plaintiff suffered injury by the refusal to allow the proposed amendment.   The theory and the sole ultimate issue in this case is that the transaction culminating in the transfer of the title to the notes to Marchetti was fraudulent and carried out with the intent to defraud the creditors of Desperati.   Under this theory, notwithstanding that the complaint avers and all the pleadings of the defendants admit that the purported transfer was made on the third day of October, 1910, the plaintiff was at liberty, in the proof of the charge of fraud, to present any fact or circumstance in connection with the transaction which might prove or which would tend to prove said transfer to have been conceived and executed in fraud and with the dishonest intention of preventing the plaintiff, as a creditor of Desperati, from enforcing or satisfying his claim against that defendant.   It was, therefore, eminently proper, under the averments of fraud as contained in the complaint, that the plaintiff should have been permitted to show the cir-

cumstances under which the transfer of the notes and mortgages was made to Marchetti, when it was made, if at all in reality, and when the settlement leading to the transfer was had, or to show by any circumstances available to him, the bad faith or *mala fides* of the transaction, if such was its character.    And this is precisely what the court allowed the plaintiff to make the attempt to do.    In other words, the plaintiff was properly given, under the rulings of the court, the full benefit of the proof to  which his proposed amendment would have been in strict or specific conformity, and the proposed amendment, if allowed, could have added no strength to his case and was, consequently, wholly unnecessary.

6. Before the court rendered its decision, the attorney for the plaintiff made formal application for the reopening of the case, basing the motion on an affidavit in which he set forth that he was taken by surprise by the proof that the assignment of the notes and mortgages was originally made to Desperati in September, 1910; that the plaintiff had no knowledge of that fact up to the time of the introduction of the proof showing it; that, if given an opportunity, he would be able to show (stating it in a general way) that the testimony of Leverone and Desperati as to the time a settlement was made and a balance struck between the latter and Marchetti was not true; that, when the assignment was made, in September, 1910, the instructions were to make it to Desperati himself and not to Marchetti; that, if given an opportunity, he could prove that the testimony of Desperati that he was indebted to Marchetti in a greater sum than one thousand two hundred and forty dollars was false, etc.

The court denied said motion, and the ruling is assigned as error.

Preliminarily, however, objection is made that the ruling cannot be reviewed because it is not properly authenticated. The proceeding on the motion is in the bill of exceptions which was settled and approved by the trial judge, and appears therein as a part of the proceedings of the trial.    The motion having been made before the cause was decided, we think it should be held to be a proceeding arising as a part and during the course of the trial.    Besides, the order overruling the motion is not appealable, and rule XXIX of this court, [160 Cal. lvi, 119 Pac. xiv], requiring the authentication of certain or-

ders when appeals are taken therefrom applies exclusively to those orders which are appealable.

But there is no merit in the point urged against the order overruling the motion. Whether the cause should be reopened for the taking of further testimony upon the showing made by the plaintiff was a matter wholly within the discretion of the trial court, and we cannot say that that discretion was not wisely and soundly exercised in the action of the court denying the motion.

7. We can see no merit in the next point discussed by counsel and which involves the contention that the finding that, at the time of the seizure and sale of the notes and mortgages by the sheriff under the execution issued on the plaintiff's judgment, the latter had acquired no right, title, or interest in or to said notes, etc., as against said Marchetti, cannot stand because the court failed to find or decide what claim or interest, if any, Leverone and Paolini had thereto or therein. The complaint explained that the notes and mortgages were to be delivered to Leverone and Paolini only in the event that the criminal case against Desperati was decided adversely to him on appeal, and further stated that the purpose of that arrangement was, not at any time to vest title to the notes and mortgages in those parties, but to indemnify them against loss in case Desperati failed to respond to the requirements of his bail bond, upon which Leverone and Paolini were sureties. The answers of the defendants and the cross-complaint of Marchetti admitted the truth of those allegations, and it was, therefore, unnecessary to make a specific finding as to the interest Leverone and Paolini had in the notes and mortgages, even if such a finding were in any event necessary, so far as the plaintiff was concerned. And the transaction involving the notes and mortgages between Desperati on the one hand and Leverone and Paolini on the other did not constitute an escrow, as the plaintiff contends. No conditional title was vested in them. They merely held a lien in the nature of a mortgage on the securities. (Civ. Code, sec. 1057; 11 Am. & Eng. Ency. of Law, 2d ed., p. 333; *Commercial Bank* v. *Pritchard*, 126 Cal. 600, 604, [59 Pac. 130].)

8. It is further contended that the conclusions of law are inconsistent, the specific point in this regard being that the finding above referred to is in fact a conclusion of law and that it is in conflict with the conclusion of law No. 1, whereby

the court concludes as a matter of law that the plaintiff never at any time acquired any interest in or title to the notes or mortgages, except such as he might have acquired by purchasing the same under the execution sale to satisfy his judgment. But, as seen, the court found that Marchetti, at the time of the levy of the execution, was the owner and entitled to the possession of the notes and mortgages, and conclusion of law No. 2 declares that the levy of the execution on the securities to satisfy the plaintiff's judgment was wrongful, inasmuch as the property, when attached or levied upon under the execution, belonged to Marchetti. Thus it is very clear that there is no conflict between the finding (or conclusion of law, if it may strictly be so regarded) referred to and the conclusions of law mentioned. In any event, if the conclusions of law may be said to be conflicting, assuming the finding mentioned to be a conclusion of law, the other findings support the judgment and the settled rule is that where this is true inconsistencies between certain conclusions of law is immaterial and cannot operate to vitiate the judgment. (*Spencer v. Duncan,* 107 Cal. 423, 426, [40 Pac. 549] ; *Roberts* v. *Hall,* 147 Cal. 434, 437, [82 Pac. 66] ; *Lange* v. *Waters,* 156 Cal. 142, 144, [19 Ann. Cas. 1207, 103 Pac. 889.].)

There are no other points requiring special notice.

The judgment and the order appealed from are affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal was denied by the supreme court on July 8, 1915.