Harry B. Sale, Plaintiff, *v.* Montrose Industrial Bank, Defendant, and Philip Wallerstein et al., Impleaded Defendants.

Supreme Court, Trial Term, Nassau County, February 17, 1943.

*George R. Brennan* for plaintiff.

*Melvin A. Albert* for defendant.

*Jacob Bookshin* for Philip Wallerstein and Isidore Cohen, impleaded defendants.

*Harry Neyer* for David Saft and Harriet Berger, impleaded defendants.

HOOLEY, J. The jury in this case returned a verdict in favor of the plaintiff and against the defendant bank for the sum of $10,286. The parties stipulated during the trial that the court reserve decision on the question of the illegality of the transaction and its effect, if any, upon the plaintiff's cause of action, until after the rendition of the verdict. At the conclusion of the opening of plaintiff's counsel, and at the close of plaintiff's case, counsel for the defendant bank made motions for dismissal of the complaint upon the ground of the illegality of the transaction and at the close of the whole case he renewed such motion and moved for the dismissal of the complaint and for a directed verdict. Upon the rendition of the verdict such motions were renewed and a motion was made to set aside the verdict as contrary to the weight of evidence and contrary to law. Decision upon these motions was reserved.

The plaintiff sues as an assignee claiming certain deposits which were alleged to have been made by Isidore Cohen and Harriet Berger in the Montrose Industrial Bank. The undisputed facts showed that the moneys in question were deposited in the bank by two men, the impleaded defendants Wallerstein and Saft, under an arrangement made by them with one Storch, as president of defendant bank, pursuant to which the defendant bank agreed to make loans to such customers of the Arrow Beer Corp. as should be designated by Wallerstein and Saft. The agreement provided that Wallerstein and Saft would deposit in the names of their dummies, Cohen and Berger, $1,000 for each $7,000 advanced by the bank to the customers of the Arrow Beer Corp.

The question of fact that was submitted to the jury narrowed itself to whether or not the deposit was to be security for all the losses on these loans or for one seventh of the losses. The transaction was substantially conceded by the testimony of all parties, except as to that detail. If the deposit was to have been security for all of the losses there could be no recovery by the plaintiff, since the total of the losses exceeded the sum on deposit. Both parties conceded that the depositors were required to have on deposit an amount equal to one seventh of the total amount of the loans, but the depositors went a step further and insisted that there was another feature, namely, that the deposit could be attacked only to the extent of one seventh of the amount of the losses.

The testimony of Wallerstein, the main witness for the plaintiff, was evasive, hesitant, incredible and thoroughly unsatisfactory. The witness Saft added little in favor of the plaintiff to the impression created by Wallerstein. The testimony of the treasurer of the bank was clear and convincing and was in no way impaired by cross-examination. In addition, the testimony of Wallerstein and Saft was refuted by the records of the bank and their admitted course of dealing with the bank after the making of the alleged agreement. At a time long prior to the closing of the account, loans in the amount of $1,025 became uncollectible and the bank deducted the entire amount of the losses from the deposit and not one seventh thereof. The testimony clearly shows that this was done with the knowledge and consent of Wallerstein and Saft. In addition the records of the bank show that at a time when $5,000 of the loans were possibly uncollectible and there was $2,000 on deposit in the account the bank demanded that Wallerstein increase the deposit by $3,000 to cover the amount of all possible losses. This was done. The pretended lack of knowledge by Wallerstein and Saft of various details of the transaction which were injurious to the claim here, indicated deliberate falsehood. The verdict was clearly against the weight of the credible evidence and calls for the interposition of the court to prevent injustice. The verdict is set aside.

With reference to the alleged illegality of the entire transaction it is clear that Wallerstein and Saft knew that the Alcoholic Beverage Control Law made unlawful a transaction in which a wholesaler, such as Arrow Beer Corp., caused to be made any loan to any person engaged in the manufacture or sale of any alcoholic beverage at wholesale or retail. [Alcoholic Beverage Control Law, § 101, subd. 1, ¶ (b).]

The case of *Central Trust Co.* v. *Mann's Restaurants, Inc.* (166 Misc. 381), cited in plaintiff's brief, is distinguishable from the case at bar. The plaintiff in that case was the bank that had made the loan. There is nothing in the provisions of the Alcoholic Beverage Control Law which prohibits a bank from making such a loan — the prohibition is against the manufacturer or wholesaler of alcoholic beverages. The court there held that the contract or loan between the bank and retail liquor licensee did not come within the purview of the statute prohibiting such loans, unless the bank was *in pari delicto* with other parties to the contract. The court specifically excluded consideration of a case such as this with these words: " The question whether or not such a note, mortgage or agreement are unenforcible

between the manufacturer and retailer is not before this court for consideration."

The plaintiff in the case at bar is the assignee of the party who is prohibited from causing such loan to be made. Any contention that Wallerstein and Saft were not acting on behalf of the Arrow Beer Corp. is untenable. The carrying of the deposit in the names of Cohen and Berger, who were strangers to the transaction but were relatives acting as dummies, the methods of the transaction, the signing of blank withdrawal slips by Cohen and Berger and the leaving of them with the bank book in the possession of the bank clearly indicated a plan to circumvent the law of the State. At the time of the deposit Saft was an officer of and stockholder in the Arrow Beer Corp. and Wallerstein's son was the owner of approximately one half of the stock of that company. Wallerstein had put up the money for his son to buy this stock and his interest in and connection with the beer company was evidenced by the fact that he guaranteed certain accounts of that company and made bank deposits for it. The connection of the Arrow Beer Corp. with these illegal loans and this account was clearly evidenced by the fact that out of the proceeds of new loans made to the beer company's customers by the bank, sums already owing to the Arrow Beer Corp. were deducted, which sums were credited to the account of Cohen and Berger.

In speaking of other prohibitory provisions of the Alcoholic Beverage Control Law, the Court of Appeals said (*Carmine* v. *Murphy,* 285 N. Y. 413, at p. 415): " We think it can hardly be presumed that the Legislature intended that transactions so punctiliously forbidden were to be accompanied by no consequences other than the penal discipline imposed by section 130." And again (at p. 416) the court, after quoting the declared purposes of the enactment of the Alcoholic Beverage Control Law as set forth in section 2 thereof, said: " In the face of this declaration, we cannot escape the conclusion that the present case is not to be excepted from the general rule of law that no right of action can spring out of an illegal contract."

Whatever rights the plaintiff may have are derived through Wallerstein and Saft, whose identification and connection with the Arrow Beer Corp. have been amply proven. They have, through their dummies, brought about the assignment of this claim to the plaintiff. He stands in their shoes. (*Siegel* v. *Fippinger, Inc.,* 264 App. Div. 203.)

It is not necessary to plead the illegality of a contract which is contrary to public policy. (*Attridge* v. *Pembroke,* 235 App. Div. 101.)

It follows that the complaint herein must be dismissed.